ACCEPTED
12-14-00015-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/9/2015 5:09:48 PM
CATHY LUSK
CLERK

**No. 12-14-00015-CV**

**In the**

**Twelfth Court of Appeals**

**Tyler, Texas**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/9/2015 5:09:48 PM
CATHY S. LUSK
Clerk

**In re Max B. Hanson, Relator**

---

**Relator's Motion for Rehearing**

---

Max Hanson brought this proceeding because the trial court, over two years ago, refused to sign a decree implementing the parties' Mediated Settlement Agreement. This Court found an abuse of discretion and granted Max relief. But yesterday the Court issued an opinion dismissing the case. It did so because the trial court, on Monday, signed a divorce decree. Respectfully, the document the trial court signed, *see* **Attachment 1,** is incomplete, improper, and not possibly enforceable as a final decree, for a cascade of reasons.

- It delegates judicial duties to third parties.

- It demands the impossible, prospectively ordering the parties to do things in the past.

- It refuses to acknowledge the parties' actual conduct and fails to find whether that conduct meets the standard of the MSA.

- It does not award property.

- It is fatally vague and non-specific in material respects.

- It omits referenced exhibits.

- And, while parroting MSA terms, it several times omits to order the specific actions necessary to effectuate them.

This proceeding should be reinstated, oral argument should be granted (*see* "The Court's analysis would benefit from oral argument," *infra*) and the trial court should be directed to sign a new decree that actually confronts the facts and implements the MSA. Otherwise, this proceeding will have accomplished little.

### The current decree shies away from necessary determinations.

A decree entered on a settlement agreement should make all rulings necessary to fully implement that settlement. In a case like this one, involving a two-year delay between the settlement and judgment, the decree inevitably will also need to adjudge whether the parties' intervening conduct has complied with the agreement and will need to adjust for any failures or changed circumstances. This is the role of a court. The trial court's decree does not undertake it. Instead, the decree mindlessly waives a judicial hand and mechanically tells the parties to go "carry out your settlement, but don't bother the court with the details." This

is an obviously wrong approach which, in this case, fosters rulings that make no sense.

For example, on page 10, the decree purports to order something that is impossible: it calls on Max, *prospectively*, to pay sums of money at specific times *in the past*. Specifically, it orders Max to make a series of six monetary payments at various dates in 2012 and 2013. Decree, p. 10-11. When the parties signed their MSA, the agreed series of payments was then entirely proper, because the payments were then all in the future. But to now order Max to make payments in the past is nonsense, the equivalent of a forbidden *ex post facto* order. This error renders the decree invalid.

Equally important, the trial court's decree does not tell Max or anyone else whether the payments he has in fact made are or are not sufficient to vest the property rights he was supposed to receive under the MSA. Decree, p. 11 ("If MAX HANSON does not pay the entire $62,500 then the escrow agent does not deliver the transfer documents to Max and Marie maintains her ownership in the Alberta property.") Max has paid the $62,500, in U.S. dollars. But Marie nonetheless has alleged that the payment obligation wasn't met, apparently on the basis that some sort of bank transfer fee may have been imposed in the fund transfer. Max's valuable real-property rights---a key to component of the entire property settlement---should not be held hostage to this

quibble, with zero guidance on the matter. But that is exactly what the current decree does.

Rather than thoughtlessly state that Max is now "ordered" to "make" certain payments back in 2012 and 2013 or give a third party the power to determine whether those payments were fully made, a proper decree would (1) acknowledge the MSA's terms as respects the obligation to pay money in the past, (2) make findings of fact as to whether Max's past conduct met his payment obligation under the MSA, and (3) declare the legal consequences of that conduct. But such a decree would not prospectively order a thing to be done before the decree is signed because that could make performance impossible. **Here, a proper decree would state that Max has fulfilled his MSA payment obligations and thus would order the necessary execution and exchange of specific documents transferring property.** The proposed decree that Max gave the trial court does this. As does the amended decree Max now proposes. *See* **Attachment 2**.

*The decree is impermissibly vague
and improperly delegates judicial duties.*

Also, on page 10, the current decree simply repeats statements from the MSA, with some editorial commentary about "all security documents" and about signing "all documents to transfer title." Specifically, the decree gives Max 10 days to sign "all security documents . . . to provide for the wife's protection in

the event [he] defaults on" mortgages upon the Canadian properties awarded him in the decree. Decree, p. 10. Then, the decree orders that the unspecified documents, whatever they might be, should be sent to the mediator, Bobby Freeman, to hold. This is inadequate, because it leaves the parties to speculate on what is required and foments dispute. Under the decree, Max has no clue as to exactly what form of documents he should sign, what form of documents Mr. Freeman will think he should have signed, or what framework Freeman may use in going about grading Max's actions. Everyone instead must fly blind, with Max left to suffer the consequence---the potential permanent loss of property rights the MSA had earmarked for him. It should not be this way.

Judgments, to be enforceable, "must be sufficiently definite and certain to define and protect the rights of all litigants . . . to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated." *Kimsey v. Kimsey*, 965 S.W.2d 690, 694 (Tex. App.—El Paso 1998, pet. denied). Divorce decrees are no different. To be effective, they likewise must spell out the details of compliance in "clear, specific, and unambiguous terms" so that the parties "will readily know exactly what duties or obligations are imposed." *Ex parte Linder*, 783 S.W.2d 754, 757 (Tex. App.—Dallas 1990, no pet.); citing *Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). A proper decree in this case thus would specify the material terms of the documents required to be signed or order the signing of identified documents (as Max's proposed decree

would do). Max repeatedly has requested just such a decree. But the trial court has demonstrated overwhelmingly that it is unprepared to order such relief. Unless and until this Court directs it to do so, the controversy will continue.

### The decree editorializes impermissibly and makes incorrect rulings.

On page 11, the decree states that the trial court has an "understanding" about the parties' agreement as to unpaid income taxes. Such statements are improper in a decree. This one, which "understands" the parties agreed to file U.S. tax returns, is also materially incorrect. While the lawyers indicated that their clients would file separate tax returns for 2013 through 2015, the matter of *where* the parties would file those returns was not agreed in the MSA or otherwise. Max should be afforded his federal right to file his tax returns in either Canada or the U.S.

### The decree excluded referenced exhibits.

The trial court's decree refers to two exhibits that are not attached. A proper decree would include them.

### The decree erroneously punishes Max for Marie's failures.

In connection with item 4 on page 11, the decree addresses the obligation to file joint tax returns for tax years 2011 and 2012. But the decree omits to say that Marie was to have prepared those returns years ago and indisputable failed to do so. This failure---by Marie---has amassed large, entirely unnecessary tax

penalties and accrued interest. Yet the decree relieves Marie of half these sums, heaping them on Max for no apparent reason. Worse, because of delays in signing a decree---delays Max was powerless to avoid---the necessary joint returns will now be postponed beyond another yearly deadline, causing additional penalties and interest to accrue. Max's proposed decree divides the penalties and interest equally through September 23 of 2013, but imposes all subsequent penalties and interest on Marie, who caused them. This is the only fair result.

### *The Court's analysis would benefit from oral argument.*

Max understands how rarely oral argument is afforded in mandamus proceedings, and how much rarer still it is in the context of rehearings. But this case needs it. A brief is just a one-way speech. To truly convey the inadequacies and unfairness of the current decree and to explain what is needed for a practical solution requires a conversation, such as is only available through oral argument.

### **Conclusion and Prayer**

Marie and the trial court have had many opportunities, and each time they have proven incapable of proposing or entering a decree that actually addresses the issues and accurately implements the MSA. This Court---to effectuate its prior mandamus order and to salvage as much of a fair resolution as is possible at this point---should grant rehearing and should order the trial court to sign Max's proposed decree or, at the very least, order it to sign a decree that is truly

final and actually decides the issues through specific orders, free of holes or obvious ambiguities that occasion interpretation, discussion, or gamesmanship.

Respectfully submitted,

/s/ Greg Smith
GREG SMITH
Bar No. 18600600
NOLAN SMITH
Bar No. 24075632
RAMEY & FLOCK, P.C.
100 East Ferguson, Suite 500
Tyler, TX 75702
Telephone: (903) 597-3301
Facsimile: (903) 597-2413
gsmith@rameyflock.com
nolan@rameyflock.com

Jerry Bain
Bar No. 01548000
BAIN, FILES, JARRETT,
   BAIN & HARRISON, PC
109 West Ferguson
Tyler, TX 75702
Telephone: (903) 595-3573
Facsimile: (903) 597-7322
jbain@bain-files.com

ATTORNEYS FOR RELATOR
MAX B. HANSON

## Certificate of Conference

Counsel emailed this motion to opposing counsel a short time before its filing, with a request that he state whether the motion will be opposed. It is assumed the motion will be opposed. If that is incorrect, we will, of course inform the court immediately upon learning so.

*/s/ Greg Smith*
Greg Smith

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the following in accordance with the applicable Rules of Civil Procedure on this the 9th day of April, 2015.

**Via email – jacassels@consolidated.net**
Jimmy A. Cassels
Cassels & Reynolds, L.L.P.
117 E. Lufkin Ave.
Lufkin, TX  75901

**Via email – binselmann@angelinacounty.net**
Hon. Robert K. Inselmann, Jr.
217th District Court
P. O. Box 908
Lufkin, TX 75902-0908

*/s/ Greg Smith*
GREG SMITH

# ATTACHMENT 1

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN COUNTY COURT AT LAW |
| THE MARRIAGE OF | § | |
| | § | |
| MARIE-CLAUDE L. HANSON | § | |
| AND | § | NUMBER 1 |
| MAX B. HANSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| TELL ARBOUR HANSON, A CHILD | § | ANGELINA COUNTY, TEXAS |

## *FINAL DECREE OF DIVORCE*

On March 31, 2015 the Court heard this case in connection with the Motions to Enter Judgment filed by both parties. Both parties objected to the entry of the proposed decree submitted by the other party. This Court convened this hearing for entry of Judgment in order to finalize this matter in accordance with the February 27, 2015 Order of the Twelfth Court of Appeals which ordered this Court to vacate its September 23, 2013 order setting aside the Mediated Settlement Agreement and to enter a final decree of divorce in compliance with the Mediated Settlement Agreement dated December 13, 2012. This Court finds that this final decree best represents the agreement of the parties as set out in the Mediated Settlement Agreement.

*Appearances*

Petitioner, MARIE-CLAUDE L. HANSON, appeared in person with her attorney of record, JIMMY A. CASSELS and announced ready.

Respondent, MAX B. HANSON, appeared through his attorney of record, JERRY BAIN, and announced ready.

*Record*

The record of testimony was duly reported by the court reporter for the 217th Judicial District Court of Angelina County, Texas. The Honorable Robert K. Inselmann heard this matter

sitting by assignment for the County Court at Law No. 1 of Angelina County, Texas.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court further finds that at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of Angelina County for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury fee, though paid by Respondent, has now been waived by both parties and their attorneys, and questions of fact and of law were successfully mediated and approved by the Court.

*Agreement of Parties*

The agreements in this *Final Decree of Divorce* were reached in mediation with Bobby L. Freeman, Mediator. This *Final Decree of Divorce* represents a merger of a *Mediated Settlement Agreement* between the parties. To the extent there exist any differences between the *Mediated Settlement Agreement* and this *Final Decree of Divorce*, this *Final Decree of Divorce* shall control in all instances. Any differences between the Mediated Settlement Agreement and this decree represent a decision by the Judge unless an agreement of the parties is specifically referenced.

*Divorce*

IT IS ORDERED AND DECREED that MARIE-CLAUDE L. HANSON, Petitioner, and

MAX B. HANSON, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Child of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following child;

Name:        TELL ARBOUR HANSON
Sex:          Male
Birth date:    June 30, 1993
Home state:  Texas

The Court further finds that this child was underage or had not graduated from high school at the time of the filing, but has since been emancipated and is no longer before the Court; accordingly, there are no provisions made herein with regard to the child, TELL ARBOUR HANSON except the provision awarding him as an exemption to his mother for the tax year 2011 as referenced in paragraph 19 on page 17 of the Mediated Settlement Agreement.

*Division of Marital Estate*

The Court finds that the division of the community estate as set forth herein is a just and right division of the parties' marital estate having due regard for the rights of each party as agreed to by the parties at mediation.

Property to Husband

IT IS ORDERED AND DECREED that the husband, MAX B. HANSON, is awarded as his sole and separate property and the wife is divested of all right, title, interest, and claim in and to all of the property set forth and itemized as follows:

H-l.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security system access and code, garage door

opener, warranties and service contracts, and title and closing documents:

> Approximately 160 acres of land located at SE *22* 57 *22* W. 4th, Sturgeon County, Alberta, Canada.

H-2.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control, including but not limited to all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment located at the Alberta, Canada, property awarded herein to husband, except as otherwise provided herein.

H-3.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-4.    All sums of cash in the possession of husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control, except as otherwise provided herein, including but not limited to the following:

> a,     Commercial Bank of Texas Acct No. xxx-5775; and

> b.     Bank of Nova Scotia Acct No. xxx-1510.

H-5.    The following stocks, bonds, and securities, together with all shares, partnership interests, dividends, splits, and other rights and privileges in "The Cow Horse Sale, Ltd.".

H-6.    The 2004 Jeep Liberty motor vehicle, vehicle identification number

_____, together with all prepaid insurance, keys, and title documents.

H-7.    The 1997 Freightliner FL60 motor vehicle, vehicle identification number, together with all prepaid insurance, keys, and title documents.

H-8.    The business known as "The Cow Horse Sale, Ltd.", including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising from or in connection with the operation of the business.

H-9.    The items of personal property specifically awarded herein to husband as outlined in the *Mediated Settlement Agreement* which is attached hereto as Exhibit "A" and made a part hereof.

H-10.    Husband's claims for personal injuries and damages in connection with Cause No. 120319049, *Max Hanson, Clifford Stover, and Pamela Stover* v. *Grisby Holton Ingram*, In the District Court of Robertson County, Texas, in which husband is represented by George Chandler.

Property to Wife

IT IS ORDERED AND DECREED that the wife, MARIE-CLAUDE L. HANSON, is awarded as her sole and separate property and the husband is divested of all right, title, interest, and claim in and to all of the property set forth and itemized as follows:

W-1.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security system access and code, garage door opener, warranties and service contracts, and title and closing documents:

> Approximately 25 acres located in the Elisha Price Survey Abstract #503 and more commonly known as 14060 W. Hwy 103, Pollok, Angelina County, Texas.

W-2.    All household furniture, furnishings, Fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control, including but

not limited to all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment located at the Pollok, Texas, property awarded herein to wife, except as otherwise provided herein.

W-3. All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-4. All sums of cash in the possession of wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control, including but not limited to the following:

    a.     Commercial Bank of Texas Acct No, xxx-\_\_\_\_\_ (wife's acct); and

    b.     Commercial Bank of Texas Acct No. xxx-\_\_\_\_\_ (wife's acct).

W-5. The 1998 Dodge Pickup motor vehicle, vehicle identification number

_____ , together with all prepaid insurance, keys, and title documents.

W-6. The 1997 Dodge Pickup motor vehicle, vehicle identification number

_____ , together with all prepaid insurance, keys, and title documents.

W-7. All right, title, and interest in "Rising Sun Ranch", including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising from or in connection with the operation of the business.

W-8. The total sum of $62,500 payable by husband to wife to equalize the division of assets between the parties. The payment terms of this debt are more specifically set out on page 11 of this Decree.

W-9. The following horse:

"Pretty Filly" also known as "Guns n Ceedees"

W-10. The items of personal property specifically awarded herein to wife as outlined in the Mediated Settlement Agreement, which is attached hereto as Exhibit "A" and made apart hereof.

W-1 1. The firearms in possession of wife.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, MAX B. HANSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, all of the debts, mortgages, encumbrances and/or obligations set forth and itemized as follows:

H-l. The balance due, including principal, interest, tax, and insurance escrow, and all other charges on the promissory notes payable to Bank of Nova Scotia and secured by a mortgage instrument on the real property located in Sturgeon County, Alberta, Canada.

H-2. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the husband in this agreement, unless express provision is made to the contrary in this agreement.

H-3. The following debts, charges, liabilities, and other obligations:

    a.      Scotia Visa Gold Acct No. xxx-7052;

    b.      Scotia Visa Acct No. xxx-1400 Line of Credit;

    c.      MBNA Acct No. xxx-6262;

    d.      Scotia Bank Acct No. xxx-0020;

    e.      Scotia Bank Acct No. xxx-7011;

    f.      Commercial Bank of Texas Acct No. xxx-0181; and

    g.      Any credit card debt due and owing which is held in the husband's name as the primary cardholder.

H-4. Any and all indebtedness owed to his mother, Maxine Hanson, and/or his son, Will Hanson.

H-5. The total sum of $62,500 payable by husband to wife to equalize the division of assets between the parties. The payment terms of this debt are more specifically set out on pages 10 & 11 of this decree.

H-6. The first $2,500 and one-half of any remaining income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2011, due and owing by the parties.

H-7. The first $2,500 and one-half of any remaining income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2012, due and owing by the parties.

<u>Debts to Wife</u>

IT IS ORDERED AND DECREED that the wife, MARIE-CLAUDE L. HANSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, all of the debts, mortgages, encumbrances and/or obligations set forth and itemized as follows:

W-1.    The balance due, including principal, interest, tax, and insurance escrow, and all other charges on the promissory note payable to Commercial Bank of Texas and secured by a deed of trust on the real property located at 14060 W. Hwy. 103, Pollok, Angelina County, Texas.

W-2.    All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in this agreement, unless express provision is made to the contrary in this agreement.

W-3.    The following debts, charges, liabilities, and other obligations:

a.    Canadian Tire MasterCard Acct No. xxx-8387;

b.    Commercial Bank of Texas Acct No. xxx-5850; and

c.    Any credit card debt due and owing which is held in the wife's name as the primary cardholder.

W-4. One-half of the income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2011 due and owing by the parties, less the first $2,500 to be paid by Husband, MAX B. HANSON.

W-5. One-half of the income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2012 due and owing by the parties, less the first

$2,500 to be paid by Husband, MAX B. HANSON.

The Court finds that in accordance with the Mediated Settlement Agreement (specifically but not limited to the Exhibit "B" section of the Mediated Settlement Agreement) that the following orders are entered with respect to the parties.

IT IS THE ORDER OF THIS COURT THAT -

(1)     MAX HANSON shall sign an Assumption Warranty Deed to MARIE L. CLAUDE HANSON conveying the Pollok Texas property to her within ten (10) days after the execution of this Decree.

(2)     All security documents (deed of trust to secure assumption or the Canadian equivalent on the Canadian real estate to provide for the wife's protection in the event MAX HANSON defaults on the Alberta, Canada mortgages.   MAX HANSON is ORDERED to sign this document within ten (10) days of the entry of this decree.

(3)     MARIE CLAUDE L. HANSON IS ORDERED to sign a Deed of Trust to Secure Assumption on the Pollok Texas property for MAX HANSON'S benefit within ten (10) days of the execution of this decree.

(4)     MARIE CLAUDE L. HANSON is ORDERED to execute all documents on the pipeline easement on the Alberta Canada property within ten (10) days of the execution of this decree.

(5)     MARIE CLAUDE L. HANSON is ORDERED to sign all documents to transfer title to the Alberta Canada property to Max with him assuming the indebtedness within ten (10) days of the execution of this decree.

All executed documents described above are to be sent to Bobby Freeman escrow agent for transmittal to the lawyers for the parties at the same time. Mr. Freeman will divide his bill for this service equally between the parties.

In connection with this agreed property division the following provisions and conditions shall be the order of this Court.

(1)     MAX HANSON IS ORDERED TO pay MARIE HANSON $62,500 on the following terms:

    (A)     $10,000 on 12/13/12
    (B)     $10,000 on 01/31/13
    (C)     $10,000 on 02/28/13

(D)     $10,000 on 03/31/13
(E)     $10,000 on 04/30/13
(F)     $12,500 on 05/31/13

If MAX HANSON is more than ten (10) days late on any of the payments – the entire sum left on the $52,500 will be due within 45 days of the missed payment plus 10 days.

If MAX HANSON does not pay the entire $62,500 then the escrow agent does not deliver the transfer documents to Max and Marie maintains her ownership in the Alberta property.

If MAX HANSON pays the entire $62,500 then the escrow agent shall deliver to Max all of the transfer documents.

If MAX HANSON dies then his estate has 120 days from his death to pay sums due and the escrow agent delivers the documents to the estate representative as and if paid.

If MAX HANSON purchases life insurance and the insurance proceeds pay the sums due at his death - the escrow agent shall deliver the transfer documents to Max's estate representative.

Income Tax Provisions

IT is the understanding of the Court that both parties (through their lawyers) have agreed to file United States Income tax returns with the Internal Revenue Service for the years 2013, 2014 and 2015 as follows:

(1)     For the tax year 2013 each party will file married (filing separately) claiming their own income and deductions.

(2)     For the tax year 2014 each party will file married (filing separately) claiming their own income and deductions.

(3)     For the tax year 2015 each part will file separately and single claiming sole responsibility for their own income and deductions.

(4)     For the tax years 2011 and 2012 IT IS THE ORDER OF THIS COURT that MARIE CLAUDE L. HANSON shall prepare the United States Tax returns and submit to MAX

HANSON for his review within ten (10) days after the execution of this decree to Jerry Bain at jbain@bain-files.com, 109 W. Ferguson, Tyler, Texas 75702

IT IS THE ORDER OF THIS COURT that both parties execute the 2011 and 2012 income tax returns and file them with the internal revenue service of the United States of America within fourteen (14) days after they are sent to MAX HANSON for review. Any dispute regarding this Order to sign or file these income tax returns should be referred to this Court immediately for resolution.

THIS COURT ORDERS the parties to execute a joint tax return for 2011 and 2012 because of its interpretation of paragraph 16 on page 15 of the Mediated Settlement Agreement.

If the parties can agree to file the 2011 and 2012 tax returns any other way (such as married filing separately, etc.) within the time limits set out above then the Court will defer to that agreement.

For the tax years 2011 and 2012 IT IS THE ORDER OF THE COURT THAT-

(1) MAX HANSON will pay the first $2500 on each return if taxes are due and the parties will each then pay one half of any sums which remain owing directly to the internal revenue service of the United States of America.

The Court has been advised by the lawyers that the sum of $32,500 (which is part of the $62,500 owed to MARIE CLAUDE L. HANSON by MAX HANSON is being held in the trust account of JIMMY A. CASSELS.

The COURT ORDERS JIMMY A. CASSELS to transmit the sum of $32,500 to the United States Internal Revenue Service in the names of both parties and list their social security numbers

on the check within ten (10) days after the entry of this divorce decree.

IT IS THE ORDER OF THIS COURT that MARIE CLAUDE L. HANSON shall have the right to claim the dependency exemption for TELL ARBOUR HANSON for the 2011 tax year in accordance with paragraph 19 on page 17 of the Mediated Settlement Agreement.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within five days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

Credit Cards

IT IS ORDERED AND DECREED that MARIE-CLAUDE L. HANSON is granted exclusive use of all credit cards in her name and MAX B. HANSON is enjoined and prohibited from using or incurring any indebtedness on said cards.

MAX B. HANSON is ORDERED to return said cards to MARIE-CLAUDE L. HANSON on or before the date of divorce.

IT IS ORDERED AND DECREED that MAX B. HANSON is granted exclusive use of all credit cards in his name and MARIE-CLAUDE L. HANSON is enjoined and prohibited from using or incurring any indebtedness on said cards.

MARIE-CLAUDE L. HANSON is ORDERED to return said cards to MAX B. HANSON on or before the date of divorce.

This decree shall serve as a Muniment of Title to transfer ownership of all property awarded to any party in this Final Decree of Divorce.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court.

*Future Litigation*

The parties agree and IT IS ORDERED that each party shall give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this *Final Decree of Divorce*, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case not expressly granted is denied. This is a final judgment, for which let execution issue and for all writs and processes necessary to enforce this judgment issue. This judgment is final and is appealable.

*Date of Judgment*

The parties satisfied the statutory residency requirements for a divorce through testimony on September 23, 2013, and this case was finally heard on the 31st day of March 2015 pursuant to an order issued by the Honorable Twelfth Court of Appeals in Tyler, Texas on February 27, 2015.

EXECUTED THIS __6__ day of __April__, 2015.

ROBERT K. INSELMANN, JR., Judge of the 217th
Judicial District Court of Angelina County, Texas
Sitting by Assignment for the County Court at Law
No. One of Angelina County, Texas

# ATTACHMENT 2

| IN THE MATTER OF | § | IN COUNTY COURT AT LAW |
|---|---|---|
| THE MARRIAGE OF | § | |
| | § | |
| MARIE-CLAUDE L. HANSON | § | |
| AND | § | NUMBER 1 |
| MAX B. HANSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| TELL ARBOUR HANSON, A CHILD | § | ANGELINA COUNTY, TEXAS |

## *FINAL DECREE OF DIVORCE*

On March 31, 2015 the Court heard this case in connection with the Motions to Enter Judgment filed by both parties. Both parties objected to the entry of the proposed decree submitted by the other party. This Court convened this hearing for entry of Judgment in order to finalize this matter in accordance with the February 27, 2015 Order of the Twelfth Court of Appeals which ordered this Court to vacate its September 23, 2013 order setting aside the *Mediated Settlement Agreement* and to enter a final decree of divorce in compliance with the *Mediated Settlement Agreement* dated December 13, 2012. This Court finds that this final decree best represents the agreement of the parties as set out in the *Mediated Settlement Agreement*.

*Appearances*

Petitioner, MARIE-CLAUDE L. HANSON, appeared in person with her attorney of record, JIMMY A. CASSELS and announced ready.

Respondent, MAX B. HANSON, appeared through his attorney of record, JERRY BAIN, and announced ready.

*Record*

The record of testimony was duly reported by the court reporter for the 217th Judicial District Court of Angelina County, Texas. The Honorable Robert K. Inselmann heard this matter

sitting by assignment for the County Court at Law No. 1 of Angelina County, Texas.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court further finds that at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of Angelina County for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury fee, though paid by Respondent, has now been waived by both parties and their attorneys, and questions of fact and of law were successfully mediated and approved by the Court.

*Agreement of Parties*

The agreements in this *Final Decree of Divorce* were reached in mediation with Bobby L. Freeman, Mediator. This *Final Decree of Divorce* represents a merger of a *Mediated Settlement Agreement* between the parties. To the extent there exist any differences between the *Mediated Settlement Agreement* and this *Final Decree of Divorce,* this *Final Decree of Divorce* shall control in all instances. Any differences between the *Mediated Settlement Agreement* and this decree represent a decision by the Judge unless an agreement of the parties is specifically referenced.

*Divorce*

IT IS ORDERED AND DECREED that MARIE-CLAUDE L. HANSON, Petitioner, and MAX B. HANSON, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Child of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following child:

Name:          TELL ARBOUR HANSON
Sex:            Male
Birth date:    June 30, 1993
Home state:   Texas

The Court further finds that this child was underage or had not graduated from high school At <u>the time of the filing.</u> but has since been emancipated and is no longer before the Court; accordingly, there are no provisions made herein with regard to the child, TELL ARBOUR HANSON except the provision awarding him as an exemption to his mother for the tax year 2011 as referenced in paragraph 19 on page 17 of the *Mediated Settlement Agreement*.

*Division of Marital Estate*

The Court finds that the division of the community estate as set forth herein is a just and right division of the parties' marital estate having due regard for the rights of each party as agreed to by the parties at mediation.

<u>Property to Husband</u>

IT IS ORDERED AND DECREED that the husband, MAX B. HANSON, is awarded as his sale and separate property and the wife is divested of all right, title, interest, and claim in and to all of the property set forth and itemized as follows:

H-1.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security system access and code, garage door opener, warranties and service contracts, and title and closing documents:

> Approximately 160 acres of land located at SE 22 57 22 W. 4th, Sturgeon County, Alberta, Canada.

H-2.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control, including  but not limited to all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment located at the Alberta, Canada, property awarded herein to husband, except as otherwise provided herein.

H-3.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-4.    All sums of cash in the possession of husband or subject to his sale control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control, except as otherwise provided herein, including but not limited to the following:

> a.    Commercial Bank of Texas Acct No. xxx-5775; and
>
> b.    Bank of Nova Scotia Acct No. xxx-1510.

H-5.    The following stocks, bonds, and securities, together with all shares, partnership interests, dividends, splits, and other rights and privileges in "The Cow Horse Sale, Ltd.".

H-6.    The 2004 Jeep Liberty motor vehicle, vehicle identification number _____, together with all prepaid insurance, keys, and title documents.

H-7.    The 1997 Freightliner FL60 motor vehicle, vehicle identification number, together with all prepaid insurance, keys, and title documents.

H-8.    The business known as "The Cow Horse Sale, Ltd," including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising from or in connection with the operation of the business.

H-9.    The items of personal property specifically awarded herein to husband as outlined on the property chart from the *Mediated Settlement Agreement* which is attached hereto as Exhibit "A" and made a part hereof.

H-10.   Husband's claims for personal injuries and damages in connection with Cause No. *120319049, Max Hanson, Clifford Stover, and Pamela Stover* v. *Grisby Holton Ingram,* In the District Court of Robertson County, Texas, in which husband is represented by George Chandler.

Property to Wife

IT IS ORDERED AND DECREED that the wife, MARIE-CLAUDE L. HANSON, is awarded as her sole and separate property and the husband is divested of all right, title, interest, and claim in and to all of the property set forth and itemized as follows:

W-l.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans. home security system access and code, garage door opener, warranties and service contracts, and title and closing documents:

> Approximately 25 acres located in the Elisha Price Survey Abstract #503 and more commonly known as 14060 W, Hwy 103, Pollok, Angelina County, Texas.

W-2. All household furniture, furnishings, Fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control, including but not limited to all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment located at the Pollok, Texas, property awarded herein to wife, except as otherwise provided herein.

W-3. All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sale control.

W-4. All sums of cash in the possession of wife or subject to her sale control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sale right to withdraw funds or which are subject to the wife's sale control, including but not limited to the following:

    a. Commercial Bank of Texas Acct No. xxx- __ (wife's acct); and

    b. Commercial Bank of Texas Acct No. xxx- __ (wife's acct).

W-5. The 1998 Dodge Pickup motor vehicle, vehicle identification number _____, together with all prepaid insurance, keys, and title documents.

W -6. The 1997 Dodge Pickup motor vehicle, vehicle identification number _____, together with all prepaid insurance, keys, and title documents.

W-7. All right, title, and interest in "Rising Sun Ranch", including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising from or in connection with the operation of the business.

W-8. The total sum of $62,500 payable by husband to wife (receipt acknowledged by Wife) to equalize the division of assets between the parties and, subject to the income tax exception outlined herein:

The Court finds that in accordance with the *Mediated Settlement Agreement*, MAX B. HANSON has paid to MARIE-CLAUDE L. HANSON the following payments and MARIE-CLAUDE L. HANSON has acknowledged receipt for said payments:

$10,000 on December 13, 2012;
$10,000 on January 31, 2013;
$10,000 on February 28, 2013;
$10,000 on March 31, 2013;
$10,000 on April 30, 2013; and
$12,500 on May 31, 2013.

W-9. The following horse:

"Pretty Filly" also known as "Guns n Ceedees"

W-10. The items of personal property specifically awarded herein to wife as outlined on the property chart from the *Mediated Settlement Agreement* which is attached hereto as Exhibit "A" and made a part hereof.

W-11. The firearms in possession of wife.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, MAX B. HANSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, all of the debts, mortgages, encumbrances and/or obligations set forth and itemized as follows:

H-l.     The balance due, including principal, interest, tax, and insurance escrow, and all other charges on the promissory notes payable to Bank of Nova Scotia and secured by a mortgage instrument on the real property located in Sturgeon County, Alberta, Canada.

H-2.     All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the husband in this agreement, unless express provision is made to the contrary in this agreement.

H-3.     The following debts, charges, liabilities, and other obligations:

   a.   Scotia Visa Gold Acct No. xxx-7052;

   b.   Scotia Visa Acct No. xxx- 1400 Line of Credit;

   c.   MBNA Acct No. xxx-6262;

   d.   Scotia Bank Acct No. xxx-0020;

   e.   Scotia Bank Acct No. xxx-7011;

   f.   Commercial Bank of Texas Acct No. xxx-0181; and

   g.   Any credit card debt due and owing which is held in the husband's name as the primary cardholder.

H-4.     Any and all indebtedness owed to his mother, Maxine Hanson, and/or his son, Will Hanson.

H-5.     The total sum of $62,500 payable by husband to wife (receipt of which is hereby acknowledged by Wife) subject to the payment of income tax exception outlined herein:

 The Court finds that in accordance with the *Mediated Settlement Agreement*, MAX B. HANSON has paid to MARIE-CLAUDE L. HANSON the following payments and MARIE-CLAUDE L. HANSON has acknowledged receipt for said payments:

$10,000 on December 13, 2012;
$10,000 on January 31, 2013;
$10,000 on February 28, 2013;
$10,000 on March 31, 2013;
$10,000 on April 30, 2013; and
$12,500 on May 31, 2013.

H-6.    The first $2,500 and one-half of any remaining income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2011, due and owing by the parties only through September 23, 2013.  After said date, all penalties and interest accruing on 2011 taxes shall be paid by MARIE-CLAUDE L. HANSON.

H-7.    The first $2,500 and one-half of any remaining income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2012, due and owing by the parties only through September 23, 2013.  After said date, all penalties and interest accruing on 2012 taxes shall be paid by MARIE-CLAUDE L. HANSON.

Debts to Wife

IT IS ORDERED AND DECREED that the wife, MARIE-CLAUDE L. HANSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, all of the debts, mortgages, encumbrances and/or obligations set forth and itemized as follows:

W -1.    The balance due, including principal, interest, tax, and insurance escrow, and all other charges on the promissory note payable to Commercial Bank of Texas and secured by a deed of trust on the real property located at 14060 W. Hwy. 103, Pollok, Angelina County, Texas.

W -2.    All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in this agreement, unless express provision is made to the contrary in this agreement.

W-3. The following debts, charges, liabilities, and other obligations:

    a. Canadian Tire MasterCard Acct No. xxx-8387;

    b. Commercial Bank of Texas Acct No. xxx-5850; and

    c. Any credit card debt due and owing which is held in the wife's name as the primary cardholder.

W-4. One-half of the income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2011 due and owing by the parties, less the first $2,500 to be paid by Husband, MAX B. HANSON, and 100% of all penalties and interest accruing after September 23, 2013 for calendar year 2011.

W-5. One-half of the income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2012 due and owing by the parties, less the first $2,500 to be paid by Husband, MAX B. HANSON, and 100% of all penalties and interest accruing after September 23, 2013 for calendar year 2012.

Transfer and Delivery of Property

MAX B. HANSON is ORDERED to execute, have properly acknowledged, and deliver to MARIE-CLAUDE L. HANSON, c/o JIMMY A. CASSELS, 117 E. Lufkin Ave., Lufkin, Texas 75901, on the date of signing of this Decree, the following instrument:

1. *Special Warranty Deed*, which is necessary to transfer title to the Angelina County property to MARIE-CLAUDE L. HANSON. Husband has signed said Deed, it has been acknowledged, and is being held by JERRY BAIN, a copy of which is attached hereto as Exhibit "E".

MARIE-CLAUDE L. HANSON is ORDERED to execute, have properly acknowledged, and deliver to MAX B. HANSON, c/o JERRY BAIN, 109 E. Ferguson, Tyler, Texas 75702, on the date of signing of this Decree, the following instruments:

1. *Deed of Trust to Secure Assumption* on the Angelina County property naming Jerry Bain as Trustee, a copy of which is attached hereto as Exhibit "B".

2. Any and all documents regarding transfer of the pipeline easement on the Alberta, Canada property described on Page 3 herein as well as her immediate relinquishment of any and all sums for payment received by her on such easement to MAX B. HANSON. Wife has signed said documents and Husband has acknowledged receipt of same.

3. *Assignment of Interest* necessary to transfer all of her right, title and interest in MAX B. HANSON's personal injury lawsuit, Cause No. 120319049, *Max Hanson, Clifford Stover, and Pamela* Stover *v. Grisby Holton Ingram*, In the District Court of Robertson County, Texas, to MAX B. HANSON, a copy of which is attached as Exhibit "C".

4. The Court ORDERS MARIE-CLAUDE L. HANSON to execute, have acknowledged, and deliver to Husband's attorney the documents attached hereto as Exhibit "D".

This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this *Final Decree of Divorce*.

Income Tax Provisions

IT is the understanding of the Court that both parties (through their lawyers) have agreed to file separate tax returns for the years 2013, 2014 and 2015 as follows:

(1) For the tax year 2013 each party will file married (filing separately) claiming their own income and deductions.

(2) For the tax year 2014 each party will file married (filing separately) claiming their own income and deductions.

(3) For the tax year 2015 each part will file separately and single claiming sole responsibility for their own income and deductions.

(4) For the tax years 2011 and 2012 IT IS THE ORDER OF THIS COURT that MARIE CLAUDE L. HANSON shall prepare the United States Tax returns and submit to MAX

HANSON for his review within ten (l0) days after the execution of this decree to Jerry Bain at jbain@bain-files.com, 109 W. Ferguson, Tyler, Texas 75702.

IT IS THE ORDER OF THIS COURT that both parties execute the 2011 and 2012 income tax returns and file them with the internal revenue service of the United States of America within fourteen (14) days after they are sent to MAX HANSON for review.

THIS COURT ORDERS the parties to execute a joint tax return for 2011 and 2012 because of its interpretation of paragraph 16 on page 15 of the *Mediated Settlement Agreement*.

If the parties can agree to file the 2011 and 2012 tax returns any other way (such as married filing separately, etc.) within the time limits set out above then the Court will defer to that agreement.

For the tax years 2011 and 2012 IT IS THE ORDER OF THE COURT THAT-

(1)    MAX HANSON will pay the first $2500 on each return if taxes are due and the parties will each then pay one half of any sums which remain owing directly to the internal revenue service of the United States of America in accordance with the language in H-7 and W-5 herein.

The Court has been advised by the lawyers that the sum of $32,500 (which is part of the $62,500 owed to MARIE CLAUDE 1. HANSON by MAX HANSON is being held in the trust account of JIMMY A. CASSELS.

The COURT ORDERS JIMMY A. CASSELS to transmit the sum of $32,500 to the United States Internal Revenue Service in the names of both parties and list their social security numbers on the check within ten (10) days after the entry of this divorce decree.

IT IS THE ORDER OF THIS COURT that MARIE CLAUDE L. HANSON shall have the right to claim the dependency exemption for TELL ARBOUR HANSON for the 2011 tax year in accordance with paragraph 19 on page 17 of the *Mediated Settlement Agreement*.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party. within five days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

Credit Cards

IT IS ORDERED AND DECREED that MARIE-CLAUDE L. HANSON is granted exclusive use of all credit cards in her name and MAX B. HANSON is enjoined and prohibited from using or incurring any indebtedness on said cards.

MAX B. HANSON is ORDERED to return said cards to MARIE-CLAUDE L. HANSON on or before the date of divorce.

IT IS ORDERED AND DECREED that MAX B. HANSON is granted exclusive use of all credit cards in his name and MARIE-CLAUDE L. HANSON is enjoined and prohibited from using or incurring any indebtedness on said cards.

MARIE-CLAUDE L. HANSON is ORDERED to return said cards to MAX B. HANSON on or before the date of divorce.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court.

*Future Litigation*

The parties agree and IT IS ORDERED that each party shall give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this *Final Decree of Divorce,* this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case not expressly granted is denied. This is a final judgment, for which let execution issue and for all writs and processes necessary to enforce this judgment issue. This judgment is final and is appealable.

*Date of Judgment*

The parties satisfied the statutory residency requirements for a divorce through testimony on September 23, 2013, and this case was finally heard on the 31st day of March 2015 pursuant to an order issued by the Honorable Twelfth Court of Appeals in Tyler. Texas on February 27, 2015.

EXECUTED THIS day of _____, 2015.

_____
ROBERT K. INSELMANN, JR., Judge of the 217th
Judicial District Court of Angelina County, Texas
Sitting by Assignment for the County Court at Law
No. One of Angelina County, Texas

| EQUIPMENT | WIFE | HUSBAND |
|---|---|---|
| 4 STAR STOCK TRAILER | | X |
| RED GROUND LOAD STOCK TRAILER | | X |
| BLACK DUMP TRAILER | | X |
| CIRCLE J 4 HORSE TRAILER | X | |
| BUFFALO CHUTE | | X |
| MILLER WELDER | | X |
| LINCOLN WIRE FEED WELDER | X | |
| DELL INSPIRON INTEL CORE I3 COMPUTER | X | |
| TOSHIBA LAPTOP COMPUTER | X | |
| DELL OPTIPLEX COMPUTER | X | |
| SHOW PRO MECHANICAL COW (IN POLLOCK) | X | |
| SHOW PRO MECHANICAL COW (IN ALBERTA) | | X |
| HAND-MADE BLUE COW FEEDER | X | |
| HAND-MADE BLUE COW FEEDER | X | |
| 5 TOMB STONE FEEDER IN ALBERTA | | X |
| 3 ROUND FEEDERS IN TEXAS | X | |
| BIG RECTANGULAR SELF HAY FEEDER | | X |
| FOSS FUEL BOILER | | X |
| TROY BUILT LAWN MOWER | X | |
| JOHN DEERE LAWN MOWER | | X |
| HONDA GENERATOR | X | |
| PANELS (IN TEXAS) | X | |
| INSTA CHAIN | | X |
| QUICKSILVER ROPING CHUTE | X | |
| QUICKSILVER ROPING CHUTE (PAID FOR) | | X |
| SCORING LANE | X | |
| ALLEY WAY PANELS (IN ALBERTA) | | X |
| HAMILTON PANELS | X | |
| 3 DEEP FREEZERS | | X |

EXHIBIT "A"

page 1

| Item | | |
|---|---|---|
| UFA SELF FEEDER (IN ALBERTA) | | X |
| SMALL TRAILER AND TWO WATER TANKS | X | |
| JOHN DEERE DITCH BLADE | | X |
| HAND-MADE STEEL SELF FEEDER (IN ALBERTA) | | X |
| BALE BOSS (IN TEXAS) | | X |
| OLD SINGER SEWING MACHINE (IN TEXAS) | X | |
| ROOHIDE CUTTING SADDLE (QY417921100EROO) | | X |
| ROOHIDE CUTTING SADDLE (DKB18730401ROO) | X | |
| WESTERN HAULER DECK (IN TEXAS) | | X |
| TAD SANDERS ROPING SADDLE | | X |
| BIG ROCK TROPHY SADDLE | | X |
| BRIDLES | *ALREADY DIVIDED* | |
| SADDLE PADS | *ALREADY DIVIDED* | |
| HORSE BLANKETS | *ALREADY DIVIDED* | |
| SHOEING STAND AND TOOLS (IN TEXAS) | | X |
| HORN CUTTERS (IN ALBERTA) | | X |
| CHOP SAW | X | |
| SKIL SAW | X | |
| DEWALT CORDLESS DRILL 18V (NEW) | X | |
| DEWALT CORDLESS DRILL 18V (OLD) | | X |
| TOOLS | X | |
| HONDA PRESSURE WASHER | | X |
| BATTERY CHARGER | | X |
| AIR COMPRESSOR | X | |
| BLACK 16' FLAT DECK | X | |
| WALDON LOADER | X | |
| KUBOTA TRACTOR | X | |
| ARENA ATTACHMENT | X | |
| KING KUTTER | | X |
| FAN | X | |
| SEMEN TANK (IN TEXAS) | X | |
| SEMEN TANK (IN ALBERTA) | | X |
| ~~TWO~~ (3) *Three* RUBBERMAID WHEEL BARROWS (IN TEXAS) | X | |
| ~~TWO~~ (3) *Three* BLUE WHEEL BARROWS (IN TEXAS) | | X |

EXHIBIT "A"

*PAGE 2*

| (redacted) | | |
|---|---|---|
| SILVER SADDLE RACK | | X |
| BLACK SADDLE RACK (IN ALBERTA) | | X |
| BLACK SADDLE RACK (IN TEXAS) | X | |
| BAR-B-QUE | X | |
| BALE HANDLER | X | |

EXHIBIT "A"

PAGE 3

## Deed of Trust to Secure Assumption

Date: June 14, 2013

Grantor: MARIE-CLAUDE L. HANSON

Grantor's Mailing Address:

14060 W. Hwy. 103
Pollock, Texas 75969
Angelina County, Texas



Trustee: Jerry Bain

Trustee's Mailing Address:

109 W. Ferguson
Tyler, Texas 75702
Smith County

Beneficiary: MAX B. HANSON

Beneficiary's Mailing Address:

Box 1119
Redwater, Alberta
Canada, ToA2W0 County

Note and Deed of Trust Assumed

Date: October 26, 2007

Original Principal Amount: $150,000.00

Maker and Grantor: MARIE-CLAUDE HANSON and MAX B. HANSON

Payee and Beneficiary:    Commercial Bank of Texas, N.A.

Recording Information:    Document Number 2007-00236563

Property (including any improvements):

SEE EXHIBIT "A" WHICH IS ATTACHED HERETO AND INCORPORATED HEREIN AS IF COPIED HEREIN VERBATIM.

**EXHIBIT "B"**

Prior Lien: None

**Other Exceptions to Conveyance and Warranty:** None

Beneficiary has conveyed the property to Grantor, who as part of the consideration promised to pay the note assumed and to be bound by the deed of trust assumed.

For value received and to secure Grantor's assumption, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property, subject to the other exceptions to conveyance and warranty. If Grantor performs all the covenants of the note and deed of trust assumed and if Beneficiary has not filed a notice of advancement, a release of the deed of trust assumed will release this deed of trust to secure assumption and Beneficiary's vendor's lien.

### Clauses and Covenants

A.   **Grantor's Obligations**

Grantor agrees to --

1.   perform all the covenants of the Note and Deed of Trust assumed; and

2.   notify Beneficiary and Lender of any change of address.

B.   **Beneficiary's Rights**

1.   Beneficiary may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2.   If Grantor fails to perform any of Grantor's obligations under the note assumed or deed of trust assumed, Beneficiary may perform those obligations, advance funds required, and then be reimbursed by Grantor on demand for any amounts so advanced, including attorney's fees, plus interest on those amounts from the dates of

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson            2

payment at the highest legal rate. The amount to be reimbursed will be secured by this deed of trust to secure assumption.

3.     Beneficiary may file a sworn notice of such advancement in the office of the county clerk where the property is located. The notice will detail the dates, amounts, and purposes of the amounts advanced and the legal description of the property.

4.     If Grantor fails on demand to reimburse Beneficiary for the amounts advanced and such failure continues after Beneficiary gives Grantor notice of the failure and the time within which it must be cured, to the extent required by law or by written agreement, Beneficiary may –

     a.     exercise Beneficiary's rights with respect to rent under the Texas Property Code, as then in effect;

     b.     direct Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

     c.     purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited to the amount owed to Beneficiary.

C.     Trustee's Rights and Duties

If directed by Beneficiary to foreclose this lien, Trustee will –

1.     either personally or by agent give notice of the foreclosure sale as required by this deed of trust to secure assumption and the Texas Property Code as then in effect;

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson        3

2.     sell and convey all or part of the property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to the other exceptions to conveyance and warranty and without representation or warranty, express or implied, by Trustee;

3.     from the proceeds of the sale, pay, in this order -

    a.     expenses of foreclosure, including a reasonable commission to Trustee;

    b.     to Beneficiary, the full amount advanced, attorney's fees, and other charges due and unpaid;

    c.     any amounts required by law to be paid before payment to Grantor; and

    d.     to Grantor, any balance; and

4.     be indemnified, held harmless, and defended by Beneficiary against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust to secure assumption, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**D.**    General Provisions

1.     If any of the property is sold under this deed of trust to secure assumption, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson        4

2. Recitals in any trustee's deed conveying the property will be presumed to be true.

3. Proceeding under this deed of trust to secure assumption, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4. This lien will be superior to liens later created even if Beneficiary has made no advancements when later liens are created.

5. If any portion of the advancements cannot be lawfully secured by this deed of trust to secure assumption, payments will be applied first to discharge that portion.

6. A sale of the property under this deed of trust to secure assumption-

    a. is subject to Grantor's continuing obligation to make all payments owing on the note assumed and to perform all obligations under the deed of trust assumed; and

    b. does not extinguish Trustee's right to conduct subsequent sales of the property for future Grantor defaults under this deed of trust to secure assumption.

7. Grantor collaterally assigns to Beneficiary all present and future rent from the property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the note assumed and performance of the deed of trust assumed, but if the rent exceeds the amount due with respect to the note and deed of trust assumed, Grantor may retain the excess. If a default exists in payment of the note assumed or performance of this deed of trust to secure assumption or of the deed of trust assumed, Beneficiary may exercise Beneficiary's rights with respect

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson          5

to rent under the Texas Property Code, as then in effect. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary will apply all rent collected under this paragraph as required by the Texas Property Code, as then in effect. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies.

8.     Interest on the debt secured by this deed of trust to secure assumption will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.     Any action taken under this deed of trust to secure assumption will not extinguish the rights of Beneficiary to proceed against Grantor under the indemnity contained in the deed by which Grantor assumed the note and deed of trust assumed.

10.     When the context requires, singular nouns and pronouns include the plural.

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson        6

11. This deed of trust to secure assumption binds, benefits, and may be enforced by the successors in interest of all parties.



*Marie Claude L. Hanson*

MARIE-CLAUDE L. HANSON

*This instrument was prepared based on information furnished by the parties, and no independent title search has been made.*

STATE OF TEXAS       )
COUNTY OF ANGELINA    )

This instrument was acknowledged before me on April 7, 2015 by

MARIE-CLAUDE L. HANSON.



NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018

_____
Notary Public, State of Texas

PREPARED IN THE OFFICE OF:   AFTER RECORDING RETURN TO:

Bain, Files, Jarrett, Bain & Harrison, PC   Max B. Hanson
109 W. Ferguson          Box 1119
Tyler, TX 75702          Redwater, Alberta
Tel: (903) 595-3573        Canada , TOA2WO
Fax: (903) 597-7322

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson     7

TRACT ONE:

EXHIBIT "H"

BEING all that certain tract or parcel of land lying and situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 505 and being all of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Deed Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 19.94 acre tract and the Northeast corner of that certain 5.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas, a ½" pipe set for corner (where a ½" pipe was found in March 1997) in the South boundary line of that certain 21.54 acre tract (28.37 acres save and except 2.35 acres and 4.48 acres) described in a deed from Brooks Williams, et al to Mavis Jane Williams Evans dated January 30, 1983 and recorded in Volume 540 on Page 277 of the Deed Records of Angelina County, Texas, said pipe being approximately 1 feet South of a fence.

THENCE S 88° 48' 02" E (called S 88° 57' 35" E) with the North boundary line of the said 19.94 acre tract and the South boundary line of the said 21.54 acre tract, at 1171.90 feet (called 1172.90 feet) the Northeast corner of the said 19.94 acre tract and the Northwest corner of that certain 15.000 acre tract described as Tract Four in a deed from Charles T. Matis, et ux to Thomas B. Fenley, et ux dated November 17, 1989 and recorded in Volume 783 on Page 563 of the Deed Records of Angelina County, Texas, a ½" pipe found for corner witnessed by a fence corner bearing S 55° E 2.7 feet, a fence corner bearing S 12° E 5.1 feet, a fence corner bearing S 15° W 6.2 feet, a fence corner bearing S 14° W 12.6 feet, and an Axle found for a corner of the said 15.000 acre tract and the Southeast corner of the said 21.54 acre tract bearing S 88° 57' 26" E 334.30 feet.

THENCE S 13° 17' 13" W (called S 13° 07' 34" W) with the East boundary line of the said 19.94 acre tract and the West boundary line of the said 15.000 acre tract, at 814.74 feet (called 814.74 feet) the Southeast corner of the said 19.94 acre tract and the Southwest corner of the said 15.000 acre tract, a ½" rod found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a concrete right-of-way monument bearing S 83° 14' 01" E 778.47 feet and a fence corner bearing N 14° 26.5 feet;

THENCE N 87° 14' 01" W (called N 87° 15' 36" W) with the South boundary line of the said 19.94 acre tract and the North right-of-way line of the said State Highway No. 103, at 115.84 feet pass on line a concrete right-of-way monument, at 1038.30 feet (called 1039.40 feet) the Southwest corner of the said 19.94 acre tract and the Southeast corner of the aforesaid 5.00 acre tract, a ½" pipe found for corner, said pipe witnessed by a ½" pipe found for a Southwest corner of the said 5.00 acre tract being N 87° 14' 01" W 134.24 feet and a concrete right-of-way monument bearing N 87° 14' 01" W 782.05 feet;

THENCE N 02° 47' 18" E (called N 02° 33' 35" E) with the West boundary line of the said 19.94 acre tract and the East boundary line of the said 5.00 acre tract, at 0.5 feet cross a fence, at 771.41 feet (called 768.94 feet) the point and place of beginning and containing 19.96 acres of land, more or less.

Basis of Bearings:    The South boundary line of that certain 5.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas (deed call: N 87° 14' 01" W 134.24 - found ½" pipes 134.24 feet apart)



BEING all that certain tract or parcel of land situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 503, and being a part or portion of that certain 7.85 acre tract described in a Contract of Sale and Purchase from the Veterans Land Board of Texas to Logan B. Finch, dated February 17, 1993 and recorded in Volume 907 on Page 157 of the Real Property Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel of land being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 7.85 acre tract and the Northeast corner of that certain 2.636 acre tract described in a deed from Tom Fenley and Charles T. Metts to Sand Flat Cemetery Association dated April 30, 1976 and recorded in Volume 442, Page 692 of the Deed Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner in the South boundary line of that certain tract described in a deed from Brooke Williams et al to Mavis Jane Williams Evans dated January 30, 1983 and recorded in Volume 540, Page 177 of the Deed Records of Angelina County, Texas;

THENCE S 88 deg. 55' 39" E with the North boundary line of the said 7.85 acre tract and the South boundary line of the said Evans tract, at 459.94 feet the Northeast corner of the said 7.85 acre tract and the Northwest corner of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Real Property Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner;

THENCE S 07 deg. 47' 26" W with the East boundary line of the said 7.85 acre tract and the West boundary line of the said 19.94 acre tract, at 271.41 feet the Southeast corner of the said 7.85 acre tract and the Southwest corner of the said 19.94 acre tract, a 1/2" pipe found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a 1/2" pipe (at a fence corner) bearing N 30 deg. W 2.5 feet;

THENCE N 87 deg. 14' 01" W with the South boundary line of the said 7.85 acre tract and the North right-of-way line of the said State Highway No. 103, at 134.24 feet a 1/2" pipe set for corner, said pipe being S 87 deg. 14' 07" E 300.00 feet from the Southwest corner of the said 7.85 acre tract, said pipe being approximately 3 feet South of a fence;

THENCE N 00 deg. 51' 39" E 413.75 feet, a 1/2" pipe set for corner;

THENCE N 87 deg. 14' 01" W, at 300.00 feet intersect the West boundary line of the said 7.85 acre tract and the East boundary line of the aforesaid 2.636 acre tract, a 1/2" pipe set for corner, said pipe being N 00 deg. 51' 39" E 413.75 feet from the Southwest corner of the said 7.85 acre tract;

THENCE N 00 deg. 51' 39" E with the West boundary line of the said 7.85 acre tract and the East boundary line of the said 2.636 acre tract, at 344.46 feet the point and place of beginning and containing 5.00 acres of land, more or less.

Basis of bearings: The North boundary line of the aforesaid 7.85 acre tract (Deed call S 88 deg. 55' 39" E).

## *ASSIGNMENT OF INTEREST*

In accordance with the terms of the Decree of Divorce rendered in Cause No. DV-00731-12-01, styled "In the Matter of the Marriage of Marie-Claude L. Hanson and Max B. Hanson", in County Court at Law Number One of Angelina County, Texas, I, MARIE-CLAUDE L. HANSON, TRANSFER, CONVEY, and ASSIGN to MAX B. HANSON, of Box 1119, Redwater, Alberta, Canada, ToA2WO County, any and all right, title, and interest I may now own or have any future claim of ownership in and to:

1.      Any judgment awarded to MAX B. HANSON in his personal injury lawsuit, Cause No. 120319049, *Max Hanson, Clifford Stover, and Pamela Stover v. Grisby Holton Ingram*, In the District Court of Robertson County, Texas.

I further authorize that a photocopy of this instrument may be used as an original.

SIGNED on _____.


_____
MARIE-CLAUDE L. HANSON


STATE OF TEXAS                          §
COUNTY OF ANGELINA                      §

This instrument was acknowledged before me on _____,
2013, by MARIE-CLAUDE L. HANSON.


_____
NOTARY PUBLIC, State of Texas


EXHIBIT "C"

 **COPY**

*THE LAND TITLES ACT*

**TRANSFER OF LAND**

Max B. Hanson and Marie Claude Lucille Hanson

being registered owners of an estate in fee simple, subject, however to such encumbrances, liens and interest are notified by memorandum underwritten, or endorsed hereon in all that certain tract of land situate in the Province of Alberta, being composed of

PLAN   0722716
BLOCK  1
LOT   1
EXCEPTING THEREOUT ALL MINES AND MINERALS
AREA: 64.9 HECTARES (160.37 ACRES) MORE OR LESS

do hereby in consideration of the division of property in Cause No. DV-00731-12-01, styled "In the Matter of the Marriage of Marie-Claude L. Hanson and Max B. Hanson; and In the Interest of Tell Arbour Hanson, a child," entered in County Court at Law Number One of Angelina County, Texas hereby acknowledge and transfer to the said transferee,

Max B. Hanson of Box 119, Redwater, Alberta   T0A 2W0

all our estate and interest in the piece of land.

IN WITNESS WHEREOF we have hereunto subscribed our names this _____ day of _____, 2015 to be effective on and after the _____ day of May, 2013.

SIGNED by the said Max B. Hanson and Marie Claude Lucille Hanson

| | |
|---|---|
| _____ | _____ |
| Witness | Max B. Hanson |
| _____ | _____ |
| Witness | Marie Claude Lucille Hanson |

EXHIBIT "D"

 **COPY**

## AFFIDAVIT OF EXECUTION

CANADA                                    )       I, _Jimmy A. Cassels_ ,
PROVINCE OF ALBERTA                       )       of Lufkin, Texas,
TO WIT:                                   )       MAKE OATH AND SAY THAT:

1.  I was personally present and did see Marie Claude Lucille Hanson named in the within (or annexed) instrument who is personally known to me to be the person named therein, duly sign and execute the same for the purpose named therein.

2.  The same was executed at Lufkin, Texas and I am the subscribing witness thereto.

3.  I know the said party and she is in my belief of the full age of 18 years.

SWORN before me at Lufkin, Texas,        )
this 7ᵗʰ day of April      ,2015          )
to be effective on or after the _____ day )
of May, 2013.                             )       _____
                                          )       JIMMY A. CASSELS
                                          )
_____          )
A NOTARY PUBLIC IN AND FOR                )
THE STATE OF TEXAS                        )

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018



**DOWER ACT**

**(SECTION 7)**

### RELEASE OF DOWER RIGHTS

TO THE REGISTRAR OF LAND TITLES:

Take notice that I, Marie Claude Lucille Hanson, being the ex-wife of Max B. Hanson of, Redwater, Alberta, who is the registered owner of the following land, namely:

PLAN      0722716
BLOCK    1
LOT      1
EXCEPTING THEREOUT ALL MINES AND MINERALS
AREA: 64.9 HECTARES (160.37 ACRES) MORE OR LESS

hereby release to my ex-husband all my life estate and other dower rights in the above described land, and I hereby discharge my, ex-husband, Max B. Hanson, his heirs, executors and administrators form any claim for dower under the *DOWER ACT* in respect of the land for and in consideration of the full and final settlement of a divorce under Cause Number DV-00731-12-01 in the County Court at Law Number 1 of Angelina County, Texas.

IN WITNESS WHEREOF I have hereunto set my hand and seal this _____ day of _____ 2015 to be effective or after the _____ day of May 2013.

SIGNED, SEALED AND DELIVERED in the presence of the Notary as set out below.

_____
Marie Claude Hanson

THE STATE OF TEXAS     §

COUNTY OF ANGELINA    §

This instrument was acknowledged before me on the 7th day of April, 2015, by MARIE-CLAUDE L. HANSON.

_____
Notary Public, State of Texas

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018



## AFFIDAVIT OF EXECUTION

CANADA                                        )    I, _Jimmy A. Cassels_
PROVINCE OF ALBERTA                           )    of Lufkin, Texas,
TO WIT:                                       )    MAKE OATH AND SAY THAT:

1.  I was personally present and did see Marie Claude Lucille Hanson named in

    (1) An Affidavit in Support of Dower Release;

    (2) A Transfer of Land Instrument under the Land Titles Act; and

    (3) A Release of Dower Rights document.

    who is personally known to me to be the person named therein, duly sign and execute these instruments for the purpose named therein.

2.  This document was acknowledged before me by Marie Claude Lucille Hanson apart from her spouse.

3.  The same was executed at Lufkin, Texas and I am the subscribing witness thereto.

4.  I know the said Marie Claude Lucille Hanson, and she is in my belief of the full age of 18 years.


SWORN before me at Lufkin, Texas,               )
this _7th_ day of _April_____, 2015             )
to be effective on or after the _____ day      )
of May, 2013.                                   )
                                                )    _Jimmy Cassels_
                                                )    JIMMY A. CASSELS
                                                )
_Noelia_                                        )
A NOTARY PUBLIC IN AND FOR                      )
THE STATE OF TEXAS                              )


NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018

 **COPY**

**DOWER ACT**

**(SECTION 7)**

**AFFIDAVIT IN SUPPORT OF DOWER RELEASE**

I, Marie Claude Lucille Hanson, of Lufkin, Texas, MAKE OATH AND SAY THAT:

1.     I am the ex-wife of Max B. Hanson of Redwater, Alberta.

2.     My ex-husband is the registered owner of the following land, namely:

    PLAN         0722716
    BLOCK      1
    LOT         1
    EXCEPTING THEREOUT ALL MINES AND MINERALS
    AREA: 64.9 HECTARES (160.37 ACRES) MORE OR LESS

3.     I am aware that the *Dower Act* gives me a life estate and other dower rights in the land.

4.     I am executing this release for the purpose of giving up my life estate and other dower rights in the land.

5.     I am executing this release freely and voluntarily without any compulsion on the part of my ex-husband.

SWORN before me at Lufkin, Texas,       )
this 7ᵗʰ day of April , 2015       )
to be effective on or after the _____ day       )     Marie Claude Lucille Hanson
of May, 2013.       )
      )
      )
      )
      )
A NOTARY PUBLIC IN AND FOR       )
THE STATE OF TEXAS       )

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018

Special Warranty Deed

Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.

Date: June 14, 2013

Grantor: MAX B.HÅNSON

Grantor's Mailing Address:

Box 1119
Redwater, Alberta
Canada, T0A2W0

Grantee: MARIE-CLAUDE L.HANSON

Grantee's Mailing Address:
14060 W. Hwy. 103
Pollok, Texas, 75969
Angelina County

Consideration:

The division of property in Cause No. DV-00731-12-01, styled "In the Matter of the Marriage of Marie-Claude L. Hanson and Max B. Hanson; and In the Interest of Tell Arbour Hanson, a child," entered in County Court at Law Number One of Angelina County, Texas, and ten dollars and other valuable consideration paid by Grantee, and Grantee's assumption of the unpaid principal and earned interest on the note in the original principal sum of One Hundred Fifty Thousand dollars ($150,000.00) dated October 26, 2007, executed by MARIE-CLAUDE L.HANSON and MAX B.HANSON, and payable to the order of Commercial Bank of Texas, N.A..

The note is secured by a vendor's lien retained in a deed dated October 26, 2007, from Commercial Bank of Texas, N.A. to MARIE-CLAUDE L.HANSON and MAX B.HANSON, and additionally secured by a deed of trust dated October 26, 2007, from MARIE-CLAUDE L.HANSON and MAX B.HANSON to Thomas W. Ellison, Trustee, recorded in Document Number 2007-00236563, of



EXHIBIT "E"

the official public records of real property of Angelina County, Texas. Grantee agrees to indemnify and hold Grantor harmless from payment of the note and from performance of Grantor's obligations specified in the instruments securing payment of the note. Grantor assigns to Grantee the casualty insurance policy on the property, all utility deposits for utility service at the property, and all funds held in escrow for payment of taxes and insurance premiums.

**Property (including any improvements):**

SEE EXHIBIT "A" WHICH IS ATTACHED HERETO AND INFORPORATED HEREIN AS IF COPIED VERBATIM.

**Reservations from Conveyance and Exceptions to Conveyance and Warranty:**

This deed is subject to all easements, restrictions, conditions, covenants, and other instruments of record.

Grantor, for the consideration and subject to the reservations from conveyance and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee all of Grantor's interest in the property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through, or under Grantor but not otherwise, except as to the reservations from conveyance and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

Grantee assumes all ad valorem taxes due on the property for the current year.


MAX B.HANSON

*This instrument was prepared based on information furnished by the parties, and no independent title search has been made.*

PROVINCE ALBERTA
~~STATE OF TEXAS~~ §

COUNTY OF ~~ANGELINA~~ §
LETHBRIDGE

Jordan T. Henrie
Barrister & Solicitor

This instrument was acknowledged before me on JUNE 14, 2013 by

MAX B.HANSON.

Notary ~~Public, State of Texas~~
Province of ALBERTA, CANADA.

Jordan T. Henrie
Barrister & Solicitor

**PREPARED IN THE OFFICE OF:**

CASSELS & REYNOLDS, LLP
117 E. Lufkin Avenue
Lufkin, TX 75901
Tel: (936) 634-8466
Fax: (936) 639-1939

BEING all that certain tract or parcel of land lying and situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 503 and being all of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Deed Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 19.94 acre tract and the Northeast corner of that certain 5.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas, a ½" pipe set for corner (where a ½" pipe was found in March 1997) in the South boundary line of that certain 21.54 acre tract (28.17 acres save and except 2.15 acres and 4.48 acres) described in a deed from Brooks Williams, et al to Mavis Jane Williams Evans dated January 30, 1983 and recorded in Volume 540 on Page 377 of the Deed Records of Angelina County, Texas, said pipe being approximately 1 feet South of a fence.

THENCE S 88° 48' 03" E (called S 88° 57' 53" E) with the North boundary line of the said 19.94 acre tract and the South boundary line of the said 21.54 acre tract, at 1173.00 feet (called 1172.99 feet) the Northeast corner of the said 19.94 acre tract and the Northwest corner of that certain 15.000 acre tract described as Tract Four in a deed from Charles T. Metts, et ux to Thomas B. Fenley, et ux dated November 17, 1989 and recorded in Volume 783 on Page 563 of the Deed Records of Angelina County, Texas, a ½" pipe found for corner witnessed by a fence corner bearing S 55° E 2.7 feet, a fence corner bearing S 12° E 5.1 feet, a fence corner bearing S 35° W 6.2 feet, a fence corner bearing S 14° W 12.8 feet, and an Axle found for a corner of the said 15.000 acre tract and the Southeast corner of the said 21.54 acre tract bearing S 88° 57' 26" E 334.30 feet;

THENCE S 12° 17' 13" W (called S 12° 07' 34" W) with the East boundary line of the said 19.94 acre tract and the West boundary line of the said 15.000 acre tract, at 814.71 feet (called 814.74 feet) the Southeast corner of the said 19.94 acre tract and the Southwest corner of the said 15.000 acre tract, a ½" rod found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a concrete right-of-way monument bearing S 87° 14' 01" E 778.47 feet and a fence corner bearing N 14° 26.9 feet;

THENCE N 87° 14' 01" W (called N 87° 13' 36" W) with the South boundary line of the said 19.94 acre tract and the North right-of-way line of the said State Highway No. 103, at 115.88 feet pass on line a concrete right-of-way monument, at 1038.30 feet (called 1039.40 feet) the Southwest corner of the said 19.94 acre tract and the Southeast corner of the aforesaid 5.00 acre tract, a ½" pipe found for corner, said pipe witnessed by a ½" pipe found for a Southwest corner of the said 5.00 acre tract being N 87° 14' 01" W 134.24 feet and a concrete right-of-way monument bearing N 87° 14' 01" W 282.06 feet;

THENCE N 02° 47' 16" E (called N 02° 43' 53" E) with the West boundary line of the said 19.94 acre tract and the East boundary line of the said 5.00 acre tract, at 2.5 feet cross a fence, at 771.41 feet (called 768.94 feet) the point and place of beginning and containing 19.96 acres of land, more or less.

Basis of Bearings:     The South boundary line of that certain 5.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas (deed call - N 87° 14' 01" W 134.24 - found ½" pipes 134.24 feet apart)

TRACT TWO

BEING all that certain tract or parcel of land situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 503, and being a part or portion of that certain 7.85 acre tract described in a Contract of Sale and Purchase from the Veterans Land Board of Texas to Logan B. Finch, dated February 11, 1993 and recorded in Volume 907 on Page 157 of the Real Property Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel of land being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 7.85 acre tract and the Northeast corner of that certain 2.636 acre tract described in a deed from Tom Penley and Charles T. Hetts to Sand Flat Cemetery Association dated April 30, 1976 and recorded in Volume 442, Page 692 of the Deed Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner in the South boundary line of that certain tract described in a deed from Brooks Williams et al to Mavis Jane Williams Evans dated January 30, 1983 and recorded in Volume 540, Page 377 of the Deed Records of Angelina County, Texas;

THENCE S 88 deg. 55' 39" E with the North boundary line of the said 7.85 acre tract and the South boundary line of the said Evans tract, at 459.94 feet the Northeast corner of the said 7.85 acre tract and the Northwest corner of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Real Property Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner;

THENCE S 02 deg. 47' 16" W with the East boundary line of the said 7.85 acre tract and the West boundary line of the said 19.94 acre tract, at 771.41 feet the Southeast corner of the said 7.85 acre tract and the Southwest corner of the said 19.94 acre tract, a 1/2" pipe found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a 1/2" pipe (at a fence corner) bearing N 30 deg. W 2.8 feet;

THENCE N 87 deg. 14' 01" W with the South boundary line of the said 7.85 acre tract and the North right-of-way line of the said State Highway No. 103, at 134.24 feet a 1/2" pipe set for corner, said pipe being S 87 deg. 14' 07" E 300.00 feet from the Southwest corner of the said 7.85 acre tract, said pipe being approximately 3 feet South of a fence;

THENCE N 00 deg. 51' 39" E 413.75 feet, a 1/2" pipe set for corner;

THENCE N 87 deg. 14' 01" W, at 300.00 feet intersect the West boundary line of the said 7.85 acre tract and the East boundary line of the aforesaid 2.636 acre tract, a 1/2" pipe set for corner, said pipe being N 00 deg. 51' 39" E 413.75 feet from the Southwest corner of the said 7.85 acre tract;

THENCE N 00 deg. 51' 39" E with the West boundary line of the said 7.85 acre tract and the East boundary line of the said 2.636 acre tract, at 344.48 feet the point and place of beginning and containing 5.00 acres of land, more or less.

Basis of bearings: The North boundary line of the aforesaid 7.85 acre tract (Deed call S 88 deg. 55' 39" E).



Exhibit "A" Legal Description

Rev. 1/93